**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 6, 2023**

# In the Court of Appeals of Georgia

A23A1394. STATE v. DIXON.

WATKINS, Judge.

Pursuant to a negotiated plea agreement, Drayl Dixon pled guilty to armed robbery and various other offenses.[1] The superior court accepted Dixon's guilty plea but, instead of following the recommended sentence of twenty years with six years to be served in prison and the remainder on probation, the court imposed a sentence of twenty years to serve five. The State appeals,[2] arguing that Dixon's sentence for armed robbery is void because the trial court departed from the mandatory minimum sentence without its consent. Because the court exceeded the discretion given in OCGA § 17-10-6.1 (e), we vacate the judgment and remand the case for resentencing.

---

[1] See OCGA § 16-8-41 (a).

[2] See OCGA § 5-7-1 (a) (6).

According to the State's factual proffer, which Dixon did not dispute, the charges in this case stemmed from a March 21, 2021 shooting incident in Walton County. Police officers were dispatched to Mathews Park in Monroe after witnesses saw a juvenile shoot at a motorist before fleeing into the wood line. Cell phone video captured the shooter arguing with the driver and another juvenile picking up what appeared to be money on the ground.

Detectives located the two juveniles inside a Jeep near the park at a residence, along with then-16-year-old Dixon. The shooter admitted to the robbery and told a detective that he gave Dixon his gun when he (the shooter) ran from the park. Dixon admitted he was waiting in the car while the two other men went to Mathews Park and that he was given the firearm to hide. Dixon also admitted that he had his own gun hidden in his bedroom, that he had provided his gun to the other two men for a drug deal, and that the shooter told him before they went to the park that they were going to commit a robbery. Officers found two firearms (including one that had been reported as stolen) in Dixon's bedroom at his residence, as well as marijuana in the backseat of the Jeep.

Dixon was indicted on one count each of armed robbery, theft by receiving stolen property, tampering with evidence, possession of marijuana, and possession

of a handgun by a person under 18.[3] Dixon entered a negotiated plea. At the plea hearing, the prosecutor provided the court with a copy of the plea recommendation, which included a recommended sentence of twenty years to serve six on the armed robbery charge. In so doing, the prosecutor agreed to deviate below the mandatory term of imprisonment of ten years.

After the trial court announced the sentence, including a sentence of twenty years to serve six for armed robbery, defense counsel acknowledged that was the negotiated plea but requested that the court "in addition . . . within [its] discretion," give Dixon credit for the two years he had served on house arrest. The prosecutor objected, noting certain issues with the ankle monitor and concluding that it was hard to tell if Dixon had been at home the entire time.

The court agreed with the State that the house arrest was not part of Dixon's actual sentence and declined to give him credit for that time. The court stated, however, "What I'm inclined to do is to reduce the six-year sentence — and this would be obviously not part of what the state had negotiated with [defense counsel], but reduce it to five[.]" The court emphasized the dangerousness of the crime, noting

_____

[3] See OCGA §§ 16-8-41 (a); 16-8-7 (a); 16-10-94 (a); 16-13-30 (j) (1); 16-11-132 (b).

that it occurred in a public park and that it was a "big deal[,]" despite Dixon's age. Although the court acknowledged that Dixon had provided the guns and was "just as guilty" as an accomplice, "[t]he only reason why [the court] believe[d] his sentence should be different than the other guys' is because he wasn't actually there." The court noted that the State had recognized such mitigating factors and then announced a sentence of five years in prison.[4]

The prosecutor immediately responded that she was "pull[ing] up the statute because [her] understanding [was] that . . . the sentence could only be deviated if basically all three parties — [the court, the State, and the defense] — were in agreement on that deviation." Defense counsel requested that the court "take its view of [the statute] as far as doing it[,]" noted that he was "not aware of any appellate opinions on that issue," and added that the State could "certainly" appeal the issue. The prosecutor then read aloud OCGA § 17-10-6.1 (e), concluding "So I guess that could be interpreted really either way." The court immediately reiterated that it was sentencing Dixon "to 20 to serve five instead of 20 to serve six." The court entered

---

[4] The court sentenced Dixon to concurrent sentences on the remaining charges, so that the total sentence was also twenty years to serve five.

a judgment and sentence in accordance with the oral sentence, and this appeal followed.

On appeal, the State argues that the trial court imposed a void sentence when it departed from the deviation that had been agreed to by the State and the defense. We agree.

Because this appeal involves the construction of a statute, our review is de novo.[5]

> When interpreting a statute, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. Further, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.[6]

A conviction for armed robbery carries a minimum sentence of ten years.[7] "OCGA § 17-10-6.1 (b) (1) states that a person who is convicted of armed robbery 'shall be sentenced to a mandatory minimum term of imprisonment of ten years,' and

---

[5] *State v. Hillsman*, 368 Ga. App. 873, 876 (891 SE2d 440) (2023).

[6] (Citation and punctuation omitted.) Id.

[7] See OCGA § 16-8-41 (b).

5

that 'no portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court.'"[8] Subsection (e) provides: "In the court's discretion, the judge may depart from the mandatory minimum sentence specified in this Code section for a person who is convicted of a serious violent felony when the prosecuting attorney and the defendant have agreed to a sentence that is below such mandatory minimum."[9]

This Court recently held in *State v. Hillsman* that "[b]ecause the language of [OCGA § 17-10-6.1 (e)] is clear and unambiguous, we cannot construe the statute as permitting anything less than an express agreement between the State and a defendant before a trial court may depart from a mandatory minimum sentence."[10] We concluded in *Hillsman* that a sentence of ten years to serve five for armed robbery was void because there was no agreement between the parties to depart from the

---

[8] *Hillsman*, 368 Ga. App. at 876.

[9] OCGA § 17-10-6.1 (e).

[10] *Hillsman*, 368 Ga. App. at 876-877.

6

mandatory minimum.[11] This Court declined to construe the prosecutor's silence at the hearing as an express agreement.[12]

Unlike in *Hillsman*, in this case, there was an express agreement to deviate, but the trial court deviated further than what the State had agreed to. In his response brief, Dixon argues that the statute is ambiguous and thus should be construed in his favor.[13] Under the construction he asks us to adopt, once the parties have agreed to a sentence that is below the mandatory minimum, the trial court's discretion is not limited by the terms of the agreement.

However, Dixon's interpretation would render some of the statutory language mere surplusage. OCGA § 17-10-6.1 (e) provides that, in her discretion, "the judge may depart from the mandatory minimum sentence . . . when the prosecuting attorney and the defendant have agreed *to a sentence that is below such mandatory minimum*."[14] Under Dixon's interpretation, it would be unnecessary for the parties to

---

[11] See id. at 877.

[12] See id.

[13] See *State v. English*, 276 Ga. 343, 349 (3) (578 SE2d 413) (2003) ("[C]riminal statutes must be construed strictly against the State and in favor of the accused.") (citation and punctuation omitted).

[14] (Emphasis supplied.)

7

agree to a specific sentence, and the last phrase in subsection (e) would thus be rendered mere surplusage. "We should presume that the General Assembly included the words ['to a sentence that is below such mandatory minimum'] for a reason[.]"[15] Moreover, allowing a judge to disregard the parties' agreement would discourage prosecutors from entering into such pleas.[16]

We also reject Dixon's argument that the State acquiesced in the trial court's ruling. The State objected to the sentence and argued that, under its understanding of OCGA § 17-10-6.1 (e), "all three parties" had to agree on the deviation. The prosecutor's comment that the statute "could be interpreted . . . either way" regarding the extent of the court's discretion (following defense counsel's comment that the

---

[15] *Kinslow v. State*, 311 Ga. 768, 775 (860 SE2d 444) (2021) (interpreting OCGA § 16-9-93 (b) (2)).

[16] See *State v. Kelley*, 298 Ga. 527, 531 (783 SE2d 124) (2016) (holding that "the trial court's authority to accept a plea agreement to a lesser charge flows from the State's consent to that agreement" and that, if the trial court did not inform the State of its intention to disregard the recommended sentence and allow the State to withdraw its consent before sentencing, the State's willingness to enter into such pleas" would be "chill[ed]").

State could appeal) does not constitute an "express agreement" to a sentence of five years in prison rather than the six that had been negotiated.[17]

*Judgment vacated and case remanded for resentencing. Barnes, P. J., and Land, J., concur.*

---

[17] See *Hillsman*, 368 Ga. App. at 877 ("[W]e cannot construe the statute as permitting anything less than an express agreement between the State and a defendant before a trial court may depart from a mandatory minimum sentence."); see also *Sanders v. State*, 358 Ga. App. 241, 245 (1) (855 SE2d 19) (2021) ("There is no bright-line rule establishing that the absence of an objection, standing alone, automatically equates to consent in all cases.") (citation and punctuation omitted).